# Johnson's Estate.

*Will—Ademption of legacy.*

Where testator in his will directs his executors to make good to a client any loss that she might sustain by reason of an investment in a mortgage which testator had made for her, and subsequent to the execution of the will makes a settlement by which, recognizing a moral obligation to his principal, he refunds to her the exact amount of the principal, and takes from her a conveyance of the property which she had bought in, and it is agreed between them that when a note given in the settlement is paid, she shall have no further claim upon him whatever, she cannot after the testator's death and after the payment of the note, claim to recover under the will, a loss from the investment resulting from costs, taxes and nonpayment of interest, all of which were not referred to in the settlement.

Argued Jan. 9, 1902. Appeal, No. 215, Jan. T., 1901, by Mary Merrefield, from decree of O. C. Phila. Co., Jan. T., 1901, No. 153, dismissing exceptions to adjudication in the estate of Israel H. Johnson, deceased. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Exceptions to adjudication.

Hanna, P. J., filed the following opinion:

After a careful consideration of the question presented by the exceptions, we fail to discover any reason to differ from the conclusion arrived at by the auditing judge and his disallowance of the claim made by exceptant. From the conceded facts it appears, testator, for a number of years, and until a few months prior to his death, was the attorney in fact of the claimant, and, as such, invested moneys belonging to her and collected the income arising therefrom. In 1890 or 1891 he invested for her the sum of $5,750 in a bond and mortgage upon certain land at Cape May Point, New Jersey. This proved an unfortunate investment. The interest becoming in arrear, the claimant foreclosed the mortgage and bid in the property at the sale. This was in August, 1892. Not only did the mortgagee lose interest upon her mortgage, but was obliged to pay taxes and costs and expenses of the legal proceedings. Testator was still her attorney in fact. And while in no sense was he an insurer of the investment, nor legally liable to reimburse his principal any loss occurring, yet from the nature of their business relations, and the investment no doubt having been made at his suggestion and upon his advice, in good conscience he recognized a duty incumbent upon him to assume and pay any loss suffered by his principal. Accordingly, when he executed his will on May 23, 1893, he included therein this provision, viz: "Any loss sustained by Mary Merrefield by an investment in Anson H. Hamilton's bond and mortgage on some of his property at Cape May Point, New Jersey, this loss, if possible, I direct my executors to make good to her, the said Mary Merrefield." She was the mortgagee and had become owner of the property before mentioned by her purchase at the sale in foreclosure. Testator was of venerable years, had made

his last will and testament, and soon, therefore, became desirous of being relieved from the cares and responsibilities of business. It is evident, also, that while by his will he made provision for the payment to his principal of the amount of any loss she might suffer by reason of the investment in the bond and mortgage referred to, yet he was anxious in his lifetime to discharge the moral liability he voluntarily assumed. This desire and intention was doubtless communicated to his principal, and met with her approval. This is manifest from their agreement in writing, dated March 1, 1894, the preamble of which recites the desire of testator to be relieved from further duty as attorney in fact, and, in view thereof, he had prepared an account of his transactions and receipts and expenditures. It further recited the covenant and promises of testator to surrender to his principal all property and securities belonging to her, held or controlled by him, and execute and deliver to her his promissory note for $5,750, payable by his executors within one year after his decease. This was the amount his principal had invested in the bond and mortgage upon ground at Cape May Point. The other party to the agreement, testator's principal, in consideration of the promises and covenants by him, agreed to convey to him in fee the real estate she owned at Cape May Point, and purchased by her as before stated. Testator further agreed to pay to his principal any excess of income derived from the property, above the taxes, etc., in lieu of interest upon his promissory note. And, finally, it was set forth in the agreement, as follows: "It is understood and agreed between the parties hereto, that upon the execution of this agreement and of said note and deed, all claims and demands that each may have against the other upon any and all cases whatsoever, except as provided for in this agreement, and said note, shall cease, end and determine, and be forever barred and extinguished." The intention of the parties, therefore, was unmistakable, viz: To dissolve the relation previously existing. And on the part of testator, to pay his principal the amount she had invested in the bond and mortgage, and in lieu of interest on his note, given and accepted as the consideration, to pay her any excess of income over and above the cost of maintaining the property. In pursuance of this agreement, the conveyance to testator was made and executed, and he delivered

to his principal his promissory note. But the agreement was not yet consummated. A settlement of the receipts and expenditures by testator was still to be made. Accordingly, the parties met on the day succeeding the date of the agreement, and, from their amicable settlement, it appears that testator had overpaid his principal the sum of $1,562.97, and she acknowledged the payment of this amount by indorsement upon his promissory note for $5,750 held by her, and thus reduced the amount due thereon to $4,187.03. The position of the parties on March 1, 1894, was simply this: Testator refunded his principal the exact sum she had invested in the bond and mortgage, and she conveyed the property to him, taking as the purchase money his promissory note, payable within one year after his death, and without interest; content to receive as interest thereon whatever amount of income should be collected by testator from the property in excess of the cost of its maintenance. The actual loss suffered by claimant was the amount she paid for taxes and costs of legal proceedings, and interest upon the amount she invested to March 1, 1894, less the interest and rent she collected prior to that date. No mention of these items is found in the agreement. Testator, in carrying out his intention to reimburse his principal the loss occasioned by her investment, performed not only his part of the moral obligation he recognized, but far more; he repaid his principal the amount she invested and took from her the property.

Again, if she had any claim or demand against testator other than the balance due upon his promissory note, it was barred and extinguished by the express terms of her agreement of March 1, 1894. We think she should be held to this agreement, and the result of the payment by testator to his principal had the effect to satisfy and extinguish the provision made for her benefit in his last will and testament previously made. It is analogous to the destruction or conversion of a specific legacy, and the bequest to the legatee was, therefore, adeemed. The bequest was for a specific purpose, viz: to pay any loss to the legatee from her investment. And the facts admitted show that, prior to testator's death, the claimant was willing to accept and did accept from him the amount of her original investment in full satisfaction and reimbursement. By her own act her loss was liquidated at that sum which was paid in part

to her by testator, and the balance since his death by his executors. There is, therefore, no loss to which the claimant is entitled as a legatee. Testator, thus having carried out, in his lifetime, the purpose of his bequest, the law is well settled that the legatee cannot claim the legacy. In 1 Roper on Legacies, 365, it is stated that where a legacy is given for a particular purpose specified in the will, and the testator during his lifetime accomplishes the same purpose or furnishes the intended legatee or beneficiary with money for that purpose, the legacy is satisfied. See, also, Theobald on Wills (2d ed.), 597.

This doctrine and cases in which it is recognized were followed by this court in Appeal of Ursinus College, Keiper's Estate, 23 W. N. C. 261, affirmed by the Supreme Court. And to the same effect is Hershey's Estate, 17 Lanc. 389, and Ritter's Estate, 10 Pa. Superior Ct. 352. As the payment by testator to claimant must be considered as a satisfaction and ademption of the bequest to her, and, by force of her agreement and release to testator, all claims against him or his estate, "upon any and all causes whatsoever," are "barred and extinguished," the claim now made was properly disallowed.

The exceptions are accordingly dismissed and adjudication confirmed.

*Error assigned* was the decree of the court.

*Benjamin H. Lowry*, for appellant.

*Eli Kirk Price*, with him *Howard Cooper Johnson*, for appellee.

PER CURIAM, February 24, 1902:

The decree of the court dismissing exceptions to adjudication is affirmed on the opinion of Judge HANNA.